UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 02-274(DSD/SRN)

Spencer Allan Roger,

Plaintiff,

v.

**ORDER**

City of Oakdale, William Sullivan, in his individual capacity and in his official capacity as City of Oakdale Chief of Police, Matt Arntzen, in his individual capacity, Jack Riley, in his individual capacity, Rolf Hagland, in his individual capacity, Karin LaTour, in her individual capacity, and John Hutton, in his individual capacity,

Defendants.

Allan R. Desmond, Esq. and Desmond Law Office, 200 South Sixth Street, Suite 1450, Minneapolis, MN 55402, counsel for plaintiff.

Pierre N. Regnier, Esq., Joseph E. Flynn, Esq. and Jardine, Logan & O'Brien, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042, counsel for defendants.

This matter is before the court upon the motion of defendants for summary judgment. For the following reason, the motion is granted.

FILED JUL - 1 2003
Richard D. Sletten, CLERK
Judgment Ent d. ______
Deputy Clerk s Initials ______

**BACKGROUND**

On August 27, 2000, Oakdale police received a report that two eight year-old girls, S.E. and M.J., had been accosted in an apartment building laundry room. Defendant Officer Arntzen was dispatched to investigate. Arntzen spoke with each of the girls and their mothers. S.E. told Arntzen that she and M.J. were passing through the laundry room of the apartment building at 6276 12th Street when a white male stopped them, forced S.E. to pull her pants down and took photographs of the two girls. M.J. told Arntzen essentially the same facts.

Another girl, Bianca Adams, told Arntzen that she had seen a man coming out of the laundry room with a camera and that another girl, Heather Krantz, might know the man's name. Krantz told Arntzen that she had seen the man and was familiar with him from another occasion.[1] Krantz said she believed the man's name was "Spencer" and that he had at one time lived in apartment 103 of the building where the assault took place. Arntzen knocked on the door of apartment 103 but no one answered. Arntzen wrote and filed a report of his investigation. He later discussed his investigation and report with defendant investigator Rolf Hagland, who was assigned to the case by defendant Captain William Hutton. Based on

---

[1] It is unclear in whether Krantz told Arntzen that she had seen the suspect the day of the assault or that she had seen him only on another occasion and was identifying him based solely on Adams' description. (See Arntzen Dep. at 27-8.)

his discussion with Arntzen, it was Hagland's understanding that Krantz had seen the man on the day of the assault. (See Hagland Dep. at 33-4.) He believed the suspect was a white male between the ages of forty-five and forty-eight.

Hagland's further investigation revealed that apartment 103 was rented to Walter Gilpin, who had not been residing there recently. The apartment manager informed Hagland that other people had recently stayed in the apartment, but he did not know their names. Hagland and other officers were unable to locate anyone living in apartment 103.

On September 2, 2000, defendant Officer Jake Riley received a report from M.J.'s mother stating that M.J. had seen her alleged assailant drive up to the apartment building and enter apartment 103. She said he was driving a green Silhouette van with Minnesota license plate number DDX 934.

That same day Riley received a report from an individual named Daniel Paradez, identifying two men Paradez believed might fit the description of the suspect. Paradez had been given a description of the suspect by an apartment manager. Paradez identified one man who lived in apartment 102 of another building, who was 5'4" tall, weighed 180-200 pounds and was thirty-five to forty years old. Paradez described the other individual as Walter Gilpin's "brother," who Paradez believed lived in apartment 102 of the building in which the assault occurred.

Hagland believed the first suspect was David Doree. He knew Doree and believed that he did not match the description of the suspect. Hagland also discovered that Doree had been implicated in criminal activity in Iowa on the date of the assault. Hagland did not consider Doree a probable suspect.

Hagland believed that the information about the second individual identified by Paradez might be a better lead. Like the individual identified by Krantz, this individual appeared to be connected with Walter Gilpin. Although Paradez thought the individual lived in apartment 102 rather than apartment 103, the connection to Gilpin was clear.

Hagland followed up on the report regarding the suspect being sighted on September 2, 2000. He learned that the green Silhouette was registered to Anita Gilpin of Montrose, Minnesota, who is Walter Gilpin's niece. In an interview with Walter Gilpin, Hagland found out that Anita Gilpin was in a long-term relationship with an individual named "Spencer" and that the two had recently stayed in apartment 103. Hagland contacted law enforcement officials in Wright County, Minnesota, where Montrose is located, and learned that a "Spencer Allan Roger" had previously been booked on charges related to a domestic assault involving Anita Gilpin.

On September 4, 2000, Hagland traveled to Wright County, where he obtained a booking photograph of Spencer Roger. Within minutes of returning to the Oakdale police headquarters, Hagland received

a tip that the suspect was currently in the green Silhouette van in the neighborhood of the apartment complex where the assault had occurred. Believing that probable cause existed to arrest Roger, Hagland, Riley and defendant Officer Karin LaTour immediately went to the complex. The officers knocked on the door of apartment 103. When Roger answered the door and identified himself, Hagland placed him under arrest.

Roger was transported to the Oakdale police headquarters and given a Miranda warning. Roger denied involvement in the assault. Roger was then transported to the Washington County jail. He was released on September 6, 2000, because formal charges had not been filed. A criminal complaint was filed in Washington County later that month. All charges against Roger were dismissed some months later.

Roger then instituted the present action, filing a civil complaint alleging that the City of Oakdale, through its employee police officers, acting under color of law, violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Defendants now move for summary judgment on all claims pursuant to Fed. R. Civ. P. 56(c).

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**II. Section 1983 Claims Against the City of Oakdale**

To bring a successful § 1983 claim against a municipality, a plaintiff must allege and prove that the defendant municipality has an official policy or custom that caused the deprivation of his civil rights. See Monell v. Department of Social Services of New York City, 436 U.S. 658, 690-91 (1978). Here, plaintiff alleges that the "City of Oakdale has a policy or practice of arresting, detaining and prosecuting persons of crimes without probable cause." (Compl. at 7.) However, plaintiff provides no evidence supporting that allegation. To survive a motion for summary judgment, the non-moving party may not rest on the pleadings, but must set forth sufficient specific facts to raise a question for trial. See Celotex, 477 U.S. at 324. Therefore, the motion of defendants for summary judgment is granted as to the City of Oakdale.[2]

**III. Section 1983 Claims Against the Defendant Officers**

Plaintiff alleges that while acting under color of state law, the individual defendants violated his constitutional right to freedom from unreasonable seizure by arresting him without probable

---

[2] Counsel for plaintiff stipulated at the hearing on the motion that dismissal of the City of Oakdale was appropriate.

cause. Defendants argue that they had sufficient probable cause to arrest plaintiff. Defendants further argue that even if probable cause was lacking, because probable cause for arrest arguably existed, they are immune from civil suit.

**A. Arrest Without Probable Cause**

While plaintiff alleges both Fourth and Fourteenth Amendment violations, claims of arrest without probable cause are properly analyzed under the express protections of the Fourth Amendment rather than the more generalized due process requirements of the Fourteenth Amendment. See Smithson v. Aldrich, 235 F.3d 1058, 1064 (8th Cir. 2001)(citing Albright v. Oliver, 510 U.S. 266, 273 (1994)). In considering a motion for summary judgment on a § 1983 wrongful arrest claim, the court must first consider whether plaintiff has alleged a violation of a clearly-established constitutional right. See Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999). While the constitutional guarantee of freedom from unreasonable seizure or arrest is clearly established (see U.S. Const. amend. IV), an arrest is not unreasonable and therefore not unconstitutional if probable cause for arrest exists. See Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975); Kuehl, 173 F.3d at 649. Even without a warrant, an arrest supported by probable cause does not give rise to a § 1983 claim. See Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir. 1986).

"Probable cause to arrest exists when at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the [suspect] had committed or was committing an offense.'" Warren v. City of Lincoln, Neb., 864 F.2d 1436, 1440 (8th Cir. 1989)(quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Reasonable suspicion and probable cause have been defined as a "particularized and objective basis" for suspicion. United States v. Cortez, 499 U.S. 411, 417-18 (1981). Probable cause analysis requires consideration of the totality of the circumstances facing the arresting officer. See Kuehl, 173 F.3d at 650. Where the facts supporting an assertion of probable cause are not in dispute, its existence is a question of law for the court.[3] See Warren, 864 F.2d at 1443 (Heaney, J., dissenting opinion).

Based on the following facts, the court finds that the defendant officers had probable cause to arrest plaintiff. Hagland, the lead investigator, had learned from Arntzen's report that the victims' stories were sufficiently consistent to merit

---

[3] Plaintiff argues that two issues of fact regarding the basis for a finding of probable cause are in dispute. Because the court finds that probable cause, or at the very least, arguable probable cause, existed independently of the factual matters which plaintiff disputes, those matters are not material. Summary judgment is appropriate where there are no material issues of fact in question. See Celotex, 477 U.S. at 322.

further investigation.[4] Hagland believed the suspect was a white male, possibly between forty-five and forty-eight years of age. Hagland also learned that other witnesses had or may have seen the suspect leaving the building carrying a camera. While it was not clear from Arntzen's report that Krantz had actually seen the suspect the day of the assault, Hagland believed that she had. Her information, which included a description of the suspect, the first name "Spencer" and an apartment number where he had previously stayed, was consistent with the statements of the victims and the other witness, Bianca Adams.

Hagland learned that the apartment mentioned by Krantz was rented to Walter Gilpin, but that other individuals had been staying there recently. He then received information that the suspect had been seen and identified by one of the victims several days after the assault and that he was driving a green Silhouette van with the license number DDX 934. That van was registered to Walter Gilpin's niece, Anita Gilpin. The suspect was seen entering apartment 103. Hagland also learned that Anita Gilpin was in a long-term relationship with a man named Spencer Allan Roger who

---

[4] While there were inconsistencies in details regarding the suspect's clothing and appearance, the victims' young age, the trauma of the assault and the relative insignificance of those details to the victims at the time of the assault explain the discrepancies. Minor discrepancies in the statements of child witnesses do not defeat probable cause where the evidence taken as a whole suggests the suspect has committed a crime. See Brodnicki v. City of Oklahoma, 75 F.3d 1261, 1264-65 (8th Cir. 1996), cert. denied, 519 U.S. 867 (1996).

seemed to match the description of the suspect. Walter Gilpin gave Hagland similar information and indicated that Anita Gilpin and Spencer Roger had recently stayed in apartment 103.

From a separate source, Daniel Paradez, Hagland learned that a white male who was thought to be Walter Gilpin's brother and living with him in "Apt. 102" might match the description of the suspect. Although Walter Gilpin was actually the tenant in apartment 103, Hagland believed that this individual could be Spencer Roger.

Hagland traveled to Wright County and obtained a recent booking photograph of Roger, but before he could prepare a photographic lineup to show the victims and witnesses, he received a report that the suspect had again been seen in the green van in the neighborhood of the apartment complex. Finding Spencer Allen Roger in apartment 103, Hagland made the arrest.

"The evaluation of evidence to determine if probable cause exists is not an exact science." Brodnicki v. City of Oklahoma, 75 F.3d 1261, 1265 (8th Cir. 1996), cert. denied, 519 U.S. 867 (1996). Probable cause is a "common sense, non-technical conception[] that deal[s] with the 'factual and practical considerations of everyday life on which reasonable men, not legal technicians, act'". Ornelas, 517 U.S. 690, 695 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983) and citing Brinegar v. United States, 338 U.S. 160, 175 (1949)). The totality of the circumstances test

necessarily includes facts the officers possessed that tend to negate the likelihood that the suspect committed a crime. See Kuehl, 173 F.3d 650. Further, officers are required "to conduct a reasonably thorough investigation prior to arresting a suspect." Id. They are not, however, required to conduct a mini-trial before arresting a suspect. See Brodnicki, 75 F.3d at 1264. The court finds that, taken as a whole, the information available to defendants at the time of arrest supports a finding of probable cause.

Plaintiff argues that the question of whether or not Krantz actually saw the suspect on the day of the assault and the fact that the defendants did not consider the other individual identified by Paradez, David Doree, to be a likely suspect, demonstrate that probable cause was lacking. Plaintiff additionally argues that defendants were required to perform a photographic lineup prior to arrest. Plaintiff also contends that defendants should have investigated his alibi before arresting him. These objections fail for the following reasons.

First, whether or not Krantz actually saw the suspect on the day of the assault, Hagland reasonably believed she did. His reliance on that belief was bolstered when one of the victims saw her assailant driving the green van several days later. That eyewitness report, together with the fact that the van is registered to Walter Gilpin's niece, who was in a relationship with

plaintiff and was known to stay in apartment 103, is sufficient independent corroboration of Krantz' statement to overcome plaintiff's first objection.

As for plaintiff's second objection, Doree did not match the victims' description of the suspect and based on police reports, he was believed to have been in Iowa at the time of the assault. Plaintiff's argument that Doree might have had time to return from Iowa and commit the assault does not change the fact that his distinct physical features do not remotely match the description of the suspect. Although Paradez gave information about two possible suspects, defendants had more information pointing to plaintiff as the prime suspect.

Plaintiff's objection that defendants should have performed a photographic lineup prior to arrest fails for two reasons. First, because defendants learned that the suspect was seen in the neighborhood within minutes of obtaining his photograph, they did not have sufficient time to set up a photographic lineup. Once officers have probable cause, they are not required to delay arrest to seek additional evidence, particularly if doing so could unduly hamper law enforcement efforts. See United States v. Everroad, 704 F.2d 403, 407 (8th Cir. 1983)(citing Beck, 379 U.S. at 91). Defendants did not want to lose the suspect if he was in the area. Second, while defendants might have been able to show the single photograph of the suspect to one or more of the victims or

witnesses, assuming they could be located, defendants acted reasonably in not doing so because showing a single photograph of a suspect to a witness is disfavored. See Simmons v. United States, 377 U.S. 377, 383-84 (1968)(noting risk of impermissible suggestiveness and possibility that witness will later recall photograph rather than what she actually observed); United States v. Sanders, 547 F.2d 1037, 1040 (8th Cir. 1976) (citing Stovall v. Denno, 388 U.S. 293, 302 (1967)). The risk of tainting the memory of a child witness is especially great. See Kentucky v. Stincer, 482 U.S. 730, 746 n. 20 (1987)(citing Moll v. State, 35 N.W.2d 639, 643 (Minn. Ct. App. 1984)).

Plaintiff's final objection fails because defendants are not required to investigate a suspect's alibi offered at the time of arrest prior to completing the arrest. See Brodnicki, 75 F.3d at 1264. The existence of probable cause is determined by facts in the officers' possession "at the time of the arrest." Id. (Emphasis added.)[5] Because the facts upon which the court bases its finding of probable cause are not in dispute, summary judgment in favor of defendants is granted.[6]

---

[5] For that same reason, plaintiff's other objections, which focus on inconsistencies in the post-arrest lineup identification, subsequent prosecutorial determinations regarding charging and other events which occurred after the arrest, have no bearing here. The only question is whether sufficient probable cause existed at the time defendants made the arrest. See Hannah, 795 F.2d at 1389.

[6] Plaintiff states that, with the exceptions already noted, (continued...)

**B. Qualified Immunity**

Moreover, the court finds that the defendants are protected from suit by qualified immunity. Under federal law, qualified immunity protects government officials reasonably exercising the discretionary functions of their official duties from civil suit. See Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). Qualified immunity is an affirmative defense and defendants have the initial burden of showing the defense applies. See Gomez v. Toledo, 446 U.S. 635, 640-41 (1980). Qualified immunity does not apply if the constitutional right violated was clearly established and the officials' actions were not objectively reasonable under the circumstances. See Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999).

Applying the Lambert analysis, plaintiff has alleged a constitutional violation because arrest without probable cause is unconstitutional. See Kuehl, 173 F.3d at 651. Further, plaintiff's right to freedom from arrest without probable cause is clearly established. See id. (citing Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)). However, based on the totality of the circumstances, the court finds that defendants' decision to arrest plaintiff was not objectively unreasonable.

---

[6](...continued)
the facts are not in dispute. (See Pl.'s Mem. in Opp'n to Defs.' Mot. for S.J. at 1.)

When analyzing objective reasonableness in the Fourth Amendment context, "[t]he issue for immunity purposes is not probable cause in fact, but arguable probable cause." Myers v. Morris, 810 F.2d 1437, 1455 (8th Cir. 1987) rev'd on other grounds. Probable cause is a fluid concept, not susceptible to mechanical analysis. See Ornelas, 517 U.S. at 703. It is not to be determined by judicial hindsight, but by consideration of the facts available to the officer at the time of the arrest. See U.S. v. Sanders, 169 F.3d 910, 913 (8th Cir. 1999). If other officers could reasonably be mistaken as to what the law requires in those circumstances, defendants are immune. See Saucier v. Katz, 533 U.S. 194, 205 (2001); Lambert, 187 F.2d at 935. In other words, qualified immunity would protect defendants even if they had been mistaken in their belief that probable cause existed, so long as their mistake was objectively reasonable. See Smithson, 235 F.3d at 1062. Defendants' actions were not objectively unreasonable because, at the very least, arguable probable cause for arrest existed. Therefore, they are immune from suit and summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motion of defendants for summary judgment [Doc. No. 10] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 1, 2003

David S. Doty, Judge
United States District Court